# THE CITY OF LAKE VIEW

## *v.*

# H. TATE.

*Filed at Ottawa November 26, 1889.*

1. MUNICIPAL CORPORATIONS—*powers—regulating the speed of railway trains—and herein, of discriminating between different roads.* By paragraph 24 of section 1, article 5, of the general Incorporation law, cities organized under that act are given power to regulate, by ordinance, the speed of railway cars and locomotives within their limits. But section 24 of the act in relation to the fencing and operating of railroads provides that no ordinance shall limit the rate of speed, in case of passenger trains, to less than ten miles per hour, nor in any other case to less than six miles per hour. Except so far as limited by the last named act, the whole matter of regulating the speed of trains is left to the sound discretion of the municipal authorities.

2. Where one railroad runs through a densely populated part of a city, where a high rate of speed of its trains would be extremely dangerous to persons and property, and another railway runs through a portion of the same city where there are but few inhabitants, and where it is improbable that injury will happen to any person who is in the exercise of ordinary care, an ordinance making a discrimination as to the speed at which the trains of the two roads may be run can hardly be said to be unreasonable.

3. But when no such disparity of circumstances is shown, making it necessary to apply different regulations to the different roads, an ordinance which limits the speed of the trains on one road and leaves the other to run through the city without such limitation, will be unreasonable, and therefore void.

4. SAME—*ordinances—reasonableness to be considered.* Although the subject matter and provisions of a municipal ordinance be left to the discretion of the city council, such discretion is not absolute, but is subject to the limitation that the ordinance must be reasonable.

5. Where the legislature, in terms, confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto can not be impeached as invalid merely because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. But when the power to legislate on a given subject is conferred, and the mode of its exercise is not

prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be held invalid.

6. SAME—*validity of ordinance is a question of law.* Whether an ordinance is unreasonable, and therefore void, is a question for the court, and not for the jury, and evidence bearing on the question is properly addressed to the court; but in determining it, the court will have to regard all the circumstances of the city, the objects sought to be attained, and the necessity which exists for the ordinance.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Criminal Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Mr. JONAS HUTCHINSON, for the appellant:

The constitutional prohibition against special legislation applies only to the legislature, and not to cities, etc. *People* v. *Harper*, 91 Ill. 370; *Covington* v. *East St. Louis*, 78 id. 548; *Baldwin* v. *Philadelphia*, 99 Pa. St. 164.

As to the power of cities to regulate the speed of cars and trains within their limits, see Redfield on Railways, 577, 578; Dillon on Mun. Corp. sec. 713; Cooley's Const. Lim. (5th ed.) 575; *Railroad Co.* v. *Haggerty*, 67 Ill. 113; *Fertilizing Co.* v. *Hyde Park*, 70 id. 646.

An ordinance may make discriminations as between places. *East St. Louis* v. *Wehrung*, 46 Ill. 392; *Railroad Co.* v. *City of Richmond*, 96 U. S. 151; *Barber* v. *Connelly*, 113 id. 27; *Railway Co.* v. *Dill*, 22 Ill. 265; *Merz* v. *Railway Co.* 88 Mo. 872.

Messrs. WALKER & EDDY, for the appellee:

The ordinance is void because it discriminates between the two competing railway lines. An ordinance which is partial or makes unjust discriminations is void. Cooley's Const. Lim. 393; *Tugman* v. *Chicago*, 78 Ill. 405; Dillon on Mun. Corp. secs. 253-256, 261; *Railway Co.* v. *Jacksonville*, 67 Ill. 37; *Meyers* v. *Railway Co.* 57 Iowa, 555.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a suit brought by the City of Lake View against H. Tate, before a justice of the peace, to recover the penalty imposed by an ordinance of said city regulating the speed of railway trains. The trial before the justice of the peace resulted in a judgment in favor of the city for $200 and costs. On appeal to the Criminal Court of Cook county, a trial *de novo* was had before the court, a jury being waived, resulting in a judgment in favor of the defendant. That judgment being taken to the Appellate Court by appeal, was affirmed, and by a further appeal the record is brought to this court for review.

The city of Lake View, during the period of time covered by the matters in question, was a municipal corporation organized under the general law, embracing a territory extending north and south along the shore of Lake Michigan, from the city of Chicago to the town of Evanston, a distance of five miles, and having an average width of about two miles. Ashland avenue runs north from the north line of Chicago to a point about one mile south of the north line of Lake View, where it is intersected by Clark street, and the latter street runs from the point of intersection in a course nearly due north to said north line of Lake View, said street and avenue thus forming a continuous line north and south through Lake View, and dividing it into two nearly equal sections. Two lines of railway, and two only, run through said city, viz, the Chicago and North-Western and the Chicago and Evanston, both in a north and south direction and nearly parallel with each other. The Chicago and North-western Railway runs from the city of Milwaukee through the town of Evanston to its general passenger station in the city of Chicago, and passes through the city of Lake View parallel with Ashland avenue and about one-eighth of a mile westerly therefrom. The Chicago and Evanston Railway runs from the town of Evanston to its general passenger station in Chicago, and passes through Lake View on a line nearly par-

allel with Ashland avenue and from a third to a half of a mile easterly therefrom.

On the 19th day of July, 1886, a general ordinance regulating the speed of trains in Lake View was passed, said ordinance being applicable alike to all railways, and limiting the speed of passenger trains to ten miles an hour and of freight trains to six miles an hour. On the 2nd day of August, 1886, said ordinance was so amended as not to apply to any railway company which should maintain gates or flagmen at certain designated crossings. January 13, 1888, the following ordinance was passed, to-wit:

"*Be it ordained by the city council of the city of Lake View:* Section 1. That in order to regulate the speed of railroad trains within the city of Lake View, the following described districts are hereby established: First, all that part of the city of Lake View lying east of Ashland avenue and North Clark street, northward from the point where North Clark street intersects with Ashland avenue, shall be, and the same is hereby declared to be, the east railroad district; second, all that part of the city of Lake View lying west of Ashland avenue and North Clark street, at the point where North Clark street intersects with Ashland avenue, shall be, and the same is hereby declared to be, the west railroad district.

"Sec. 2. That no railroad train, locomotive, engine or car used for the transportation of passengers, shall be run through or within the limits of the east railroad district, as above described, at a greater rate of speed than ten (10) miles an hour, and in any other case than passenger trains the rate of speed within such districts shall not exceed six (6) miles an hour.

"Sec. 3. If any railroad corporation, or its conductor, engineer, or other agent or servant, shall violate the provisions of the preceding section, such corporation, conductor, engineer, or other agent or servant, shall be deemed guilty of a misdemeanor, and shall be punished by a fine not exceeding $200 for such offense, in addition to the liability to such punishment

as is provided by the statute of the State of Illinois for like offense.

"Sec. 4. The mayor of the city of Lake View is hereby charged with the duty of using all means and measures in his power to detect and punish any violation of this ordinance; and the city attorney is hereby charged with the duty of rendering the mayor such assistance in the premises as may be necessary to bring to punishment any offenders against this ordinance.

"Sec. 5. An ordinance entitled 'An ordinance to regulate the speed of railroads,' passed and approved July 19, 1886, and an ordinance amendatory thereof, passed August 2, 1886, are hereby repealed.

"Sec. 6. This ordinance shall take effect and be in force from and after its proper publication."

The defendant was a locomotive engineer in the employ of the Chicago and Evanston Railway Company, and the complaint charges that, on the 21st day of February, 1889, he ran a train of cars on said railway, through the "East Railway District" of said city of Lake View at a greater rate of speed than ten miles an hour, in violation of said ordinance.

It was proved at the trial, and is admitted here, that the defendant, at the time and place charged in the complaint, ran a passenger train on said railway at a greater rate of speed than ten miles an hour, the only contention being as to the validity of said ordinance.

Paragraph 24 of section 1, article 5, of the General Incorporation Law, empowers the city council of any city organized thereunder, "to regulate the speed * * * of cars and locomotives within the limits of the corporation." 1 Starr & Curtis, 464. Section 24 of the Act in relation to fencing and operating Railroads, provides, that no ordinance shall limit the rate of speed, in case of passenger trains, to less than ten miles per hour, nor in any other case to less than six miles per hour. 2 Starr & Curtis, 1941. With this exception, there

is no statute which attempts to prescribe either the mode or measure of the limitation which municipal corporations may impose upon the speed of trains running within their corporate limits. So far then as the statute is concerned, the whole matter, with the above exception, is left to the discretion of the municipal authorities.

The law is well settled, however, that where the subject matter and provisions of a municipal ordinance are left to the discretion of the city council, such discretion is not absolute, but is subject to the limitation that the ordinance must be reasonable. "Where the legislature, in terms, confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto can not be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the legislature distinctly says may be done can not be set aside by the courts because they may deem it unreasonable or against sound policy. But where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid." 1 Dillon on Municipal Corporations, sec. 328; id. section 319, and authorities cited. Whether a particular ordinance is unreasonable and therefore void is a question for the court and not for the jury, and evidence bearing upon the question is properly addressed to the court, but in determining it, the court will have regard to all the circumstances of the city, the objects sought to be attained, and the necessity which exists for the ordinance. Id. section 327. See also *Tugman* v. *City of Chicago,* 78 Ill. 405; *City of Chicago* v. *Rumpff,* 45 id. 90.

It is alleged that the ordinance in question is unreasonable because it constitutes a special and unwarranted discrimination between two rival and competing lines of railway.   Both of said railways are engaged in the business of transporting passengers from the town of Evanston to the city of Chicago, large numbers of whom, as the evidence shows, are being transported between those points daily.   The Chicago and Evanston Railway, running as it does through the East Railroad District, is limited to a speed of ten miles an hour.   But the previous ordinances which were applicable to the entire city being repealed, and no new limitation being imposed upon the speed of trains in the West Railroad District, the trains on the Chicago and North-western Railway were subject to no limitation as to speed, but might run at a much higher rate.   In suburban transportation speed is a matter of prime importance, and the railway company that is able to offer to the public the speediest transportation, thereby acquires a very important and manifest advantage over its competitors.

That said ordinance constitutes an important discrimination between said lines of railway does not admit of serious question.   Its validity, then, must depend upon whether the special circumstances, as shown by the evidence, are such, that in the interest of public safety, such discrimination is necessary and therefore warranted.   Undoubtedly the circumstances of two lines of railway running through the same city may be such as to justify or even necessitate the imposition of different measures of restraint upon the speed of their trains.   One may run through a portion of the city which is densely populated and where a high rate of speed would be extremely dangerous to persons and property, while the other may run through a portion of the same municipality where there are but few inhabitants, and where it is extremely improbable that injury will happen to any person who is in the exercise of ordinary care.   In such case a discrimination could hardly be said to be unreasonable.

In the case before us, no such disparity of circumstances seems to be shown. Part of the line of both railways is through thickly settled portions of the city and part through sections where there are but few inhabitants. It may be fairly inferred from the evidence that the number of persons and vehicles ordinarily crossing the track of the Chicago and Evanston Railway at the street crossings of the city within a given time is somewhat greater than the number of those crossing the track of the Chicago and North-western Railway during the same time, but it appears that the number crossing the tracks of both railways is very large, and that the disparity is not so great as to necessitate or even justify different regulations as to the speed of trains. We are of the opinion then that no justification for the discrimination is shown, and that the ordinance therefore must be held to be invalid.

Thus far we have discussed the question of the validity of the ordinance as though it were open to this court to consider and weigh the evidence bearing upon that question; but if the matters thus presented are to be regarded as mere questions of fact upon which the judgment of the Appellate Court is final, the same result necessarily follows. The case was tried in the Criminal Court before the court without a jury, and was submitted to the court upon the evidence, no propositions being presented to be held as the law in the decision of the case. If then the determination of the validity of the ordinance involved the decision of a question of fact, or even of a mixed question of law and fact, such questions are conclusively settled by the judgment of the Criminal Court, affirmed, as said judgment has been, by the Appellate Court. In either view of the case, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*